**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

Paula Victoria Whiting
2912 "O" Street S.E.
Washington DC 20020

FILED
CIVIL ACTIONS BRANCH

APR 2 5 2019

Superior Court
of the District of Columbia
Washington, DC.

*Plaintiff*

**19-0002683**

*vs.*

CIVIL ACTION No.

Labat-Anderson
8000 Westpark Drive, Ste 400
Mc lean Va. 22102-3105

*Defendants*

## COMPLAINT

1. **Jurisdiction of this court is founded on D.C. Code Annotated, 2001 edition, as amended, Sec. 11-921.**

I was a government contractor working for Labat-Anderson assigned to Department of Justice. My boss had me working for 3 supervisors (one blackman, one India woman and one black married woman with 2 children named Shirley Phelleps. Shirley phelleps walked up behind me while I was typing at my desk. She hugged me, kissed me on Top of my head, She put her hands on my chest squeezed and playing with my chest, then she put her on my stomach and slide her hands to the bottom of my stomach toward my my private parts. I said get off me, This is sexual Harrassment, She laughed I balled up my fist #umped up out my chair ready to hit her and She walked away

**Wherefore, Plaintiff demands judgment against Defendant in the sum of $ 15,050,000.00 with interest and costs.**

**DISTRICT OF COLUMBIA, SS**

Phone:

Paula Victoria Whiting , **being first duly sworn on oath deposes and says that the foregoing is a just and true statement of the amount owing by defendant to the plaintiff, exclusive of all set-off and just grounds of defense.**

Paula Victoria Whiting
(Plaintiff)                                              Agent)

**Subscribed and sworn to before me this** _____ **day of** 4-25-19 **20** ___.

(Notary Public/Deputy Clerk)

FORM CV-1013/ Nov. 00

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAULA V. WHITING,

          Plaintiff,

        v.

LABAT-ANDERSON, INC.

          Defendant.

Civil Action No. 1:10-cv-00898 (BAH)
Judge Beryl A. Howell

## MEMORANDUM OPINION

The plaintiff, Paula V. Whiting, a former short-term, temporary employee of the

defendant, Labat-Anderson, Inc., brought this lawsuit under Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. § 2000e *et seq.* She alleges, in a two-count Complaint, sexual

harassment (Count I) and retaliation (Count II) based on two incidents that allegedly took place

on a single-day while the plaintiff was working as a contract employee for Labat-Anderson, Inc.

at the Department of Justice ("DOJ"). Specifically, the plaintiff alleges that she was "kissed and

touched in a sexual and inappropriate manner" by a DOJ employee, and that her employer both

failed to take corrective action against the DOJ employee and retaliated against the plaintiff for

complaining about the incidents by not giving her another assignment after her short-term

employment ended. Complaint ("Compl."), ECF No. 1, ¶ 8; *id.* at 5. Pending before the Court is

the Defendant's Motion for Summary Judgment ("Def.'s Mot."), ECF No. 28. For the reasons

explained below, the Court will grant the motion.[1]

---

[1] The defendant argues in its Reply that its Motion for Summary Judgment "should be granted without consideration
of the Opposition filed by Plaintiff" because the plaintiff filed Plaintiff's Opposition to Defendant's Motion for
Summary Judgment, ECF No. 29, late. Def. Labat-Anderson Incorporated's Reply in Supp. of its Mot. for Summ. J.
("Def.'s Reply"), ECF No. 30, at 1. On January 28, 2013, the Court issued an Order to Show Cause why the Motion
for Summary Judgment should not be granted as conceded. Minute Order (Jan. 28, 2013). The plaintiff, on
February 4, 2013, responded to the Court's Order to Show Cause, stating that her late-filing of the Opposition was a

## I.    FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.    The Plaintiff's Short-Term Employment with the Defendant

In May 2008, the defendant, a consulting firm, hired twenty people, including the

plaintiff, to provide temporary on-site general office services and litigation support services for

the DOJ's Office of Immigration Litigation ("OIL"), for a ninety-day period ending September

30, 2008. *See* Affidavit of Kathy Davis-Hall ("Davis-Hall Aff."), ECF No. 28-3, ¶¶ 2, 4, 6, 8.

One of the defendant's employees, Kathy Davis-Hall, a Project Supervisor, twice

interviewed the plaintiff before hiring her, making clear in each of the interviews that the

defendant was hiring for a temporary, provisional position that would end in ninety days, on

September 30, 2008, when the DOJ's funding for the project would end. *See id.* ¶ 9; Transcript

of Deposition of Plaintiff Paula V. Whiting ("Pl.'s Dep."), ECF No. 28-4, at 50:15–17; Def.

Labat-Anderson Incorporated's Statement of Undisputed Facts in Supp. of its Mot. for Summ. J.

---

"mistake," resulting from a miscalculation of the due date, and arguing that the mistake should be considered "excusable neglect." Pl.'s Response to Order to Show Cause, ECF No. 36 at 3. The plaintiff's counsel suggests that it was the plaintiff herself who reminded counsel of the due date for her Opposition. *See id.* The plaintiff further argues that allowing the late-filing of her Opposition would not "unfairly prejudice" the defendant. *Id.* ¶ 4. The plaintiff also filed, as an exhibit to her response, a Motion for Extension of Time to File Response for Motion for Summary Judgment, ECF No. 36-1, which was re-docketed as a motion at ECF No. 38. The defendant opposes the motion for an extension of time, arguing that "Plaintiff has regularly and repeatedly ignored the rules governing the prosecution of actions in this Court," and that the plaintiff's explanation that she miscalculated the due date for her Opposition does not constitute "excusable neglect" under Federal Rule of Civil Procedure 6(b). Def. Labat-Anderson Incorporated's Opp'n to Pl.'s Mot. for an Extension of Time to File Response to Mot. for Summ. J., ECF No. 37, at 6-7. The Court disagrees. The Court will accept the plaintiff's explanation as excusable neglect and not allow the plaintiff's counsel's mistakes to prejudice the plaintiff, especially when the delay will not prejudice the defendant. Accordingly, in the interest of deciding this matter on the merits, the Court will grant *nunc pro tunc* the Plaintiff's Motion for an Extension of Time to File Response for Motion for Summary Judgment, ECF No. 38, retroactively extending the deadline for the plaintiff to file her Opposition to the Motion for Summary Judgment until March 29, 2012. Therefore, the plaintiff's Opposition will be considered timely filed.

[2] The plaintiff filed a Response to Defendant's Statement of Undisputed Facts ("Pl.'s Facts"), ECF No. 29-1. The plaintiff does not dispute the majority of the facts outlined in Defendant Labat-Anderson Incorporated's Statement of Undisputed Facts in Support of its Motion for Summary Judgment ("Def.'s Facts"), ECF No. 28-2, but, for those facts that the plaintiff disputes, the plaintiff states only that the defendant's facts in a particular paragraph "are disputed." She does not cite to specific portions of the record, nor explain on what basis the defendant's facts are disputed. The Court will therefore "assume that [the] facts identified by the moving party in its statement of material facts are admitted." LCvR 7(h)(1). The plaintiff also provides a "Statement of Additional Material Facts." ECF No. 29-1 at 12-13. Again, the Court will not consider those "additional material facts" that do not include a citation to the record. *See* LCvR 7(h)(1). In any event, even if the "facts" proffered by the plaintiff were considered, the result in this case would be the same.

("Def.'s Facts"), ECF No. 28-2, ¶ 14. The plaintiff acknowledged that she understood that the position she accepted with the defendant was a short-term position. *See* Pl.'s Dep. at 50:15–17 (Q: "But she did tell you that that position was temporarily funded?" A: "Right.").[3]

During the plaintiff's short-term employment with the defendant, she completed work for several individuals at the DOJ, and was supervised by Ms. Davis-Hall, who was based on-site at the DOJ. *See* Davis-Hall Aff. ¶ 10; Pl.'s Dep. at 54:5–9.

The plaintiff's supervisor reports that, during the plaintiff's first few weeks on the job, the group of DOJ employees with whom the plaintiff was initially assigned – the "Second Circuit team" – was dissatisfied with the plaintiff's performance and asked Ms. Davis-Hall not to assign the plaintiff to work with them on future projects. *See* Davis-Hall Aff. ¶ 14. Based on this request and Ms. Davis-Hall's "assessment of Ms. Whiting's limited skill set," Ms. Davis-Hall subsequently reassigned the plaintiff to work in the records department, where the plaintiff helped route records to the appropriate DOJ paralegals and helped maintain the records database. *See id.* ¶ 15.[4]

One of the plaintiff's duties in the records department was to assist Shirley Phelps, a DOJ paralegal, with various office tasks. Ms. Phelps had previously worked for the defendant, but was subsequently hired by the DOJ. *See* Pl.'s Dep. at 14:13–19, 187:7–8; Davis-Hall Aff. ¶ 16.

---

[3] While the plaintiff stated in her deposition that she believed the contract funding would end on October 30, 2008, rather than September 30, 2008, the plaintiff does not dispute that she knew she was on a short-term assignment. *See* Pl.'s Dep. at 58:13–18.

[4] Following her reassignment to the records department, there was an incident, on July 7, 2008, where the plaintiff sent an email to several DOJ employees stating that "SOMEONE IS LEAVING 2ND CIRCUIT DOCUMENTS ON MY DESK. I WAS FIRED FROM 2ND CIRCUIT . . . . PLEASE TELL THE PERSON TO COME GET THE DOCUMENTS." Davis-Hall Aff. Ex. 1, ECF No. 28-3 (Email from Plaintiff to DOJ employees, dated July 7, 2008) (emphasis in original). The plaintiff's supervisor spoke with her about this incident and instructed the plaintiff not to send any other emails to DOJ employees without prior approval. *See* Davis-Hall Aff. ¶ 14. The plaintiff was clearly not "terminated" by the Second Circuit team but simply reassigned to the records department.

3

By virtue of her work for Ms. Phelps, the plaintiff regularly interacted with her. Davis-Hall Aff. ¶ 16.

### B. The August 11, 2008 Incidents at Issue in this Lawsuit

This lawsuit is premised on two brief incidents that the plaintiff alleges occurred on August 11, 2008 during her interactions with Ms. Phelps, allegations that Ms. Phelps has denied. *See* Davis-Hall Aff. ¶ 19; Compl. ¶¶ 8, 10.

The plaintiff alleges that the first incident took place at approximately 8:00 a.m. on August 11, 2008. Pl.'s Dep. Ex. 8; Pl.'s Dep. at 112:4–11. At that time, the plaintiff alleges that while she was typing at her desk, Ms. Phelps began talking with her and asked if the plaintiff was "still mad at her." Pl.'s Dep. at 108:19–21. The plaintiff responded "[y]es, you know, or whatever like that." *Id.* at 108:20–21. Ms. Phelps then said, "Let me give you a hug," and the plaintiff refused. *Id.* at 108:21–22. The plaintiff then states that Ms. Phelps "ran over to [her], and the whole time she's laughing." *Id.* at 109:2–3.

[A]nd so then she put her hands down like to hug me, but she went past . . . my shoulders and . . . grabbed the bottom of my stomach. And I said 'Get off me. Leave me alone. This is sexual harassment.' So then she started laughing, and I heard Cecily [a co-worker] laughing because she heard Shirley Phelps laugh. So then she started sliding her hand up and then she grabbed my chest, and I was . . . in shock, and so then she started kissing on my cheek and on the top of my head. And then she kept grabbing my chest and then she started jiggling my chest and she kept squeezing it. And the more I said, get off of me, leave me alone, get off me, she kept on laughing. The more I screamed, the harder she squeezed my chest. . . . I said: "Get off of me,' and she just kept on laughing. So I went to push away from the desk like that, and then she pinned me under the desk like that. I said: 'I don't believe this. Get off of me. Leave me alone. This is sexual harassment.' And she kept squeezing my chest and laughing, and so I went back like that, and then she ran back in the corner of the cubicle. And I turned to her with my fist, and she said: 'I bought you a present.' And then she took off running. Then I took off running.

*Id.* at 109:4–110:13. The plaintiff states that this whole incident lasted "[a] couple seconds." *Id.* at 113:17.

4

The plaintiff alleges that the second incident took place later that day. *See id.* at 130:9–

12. That afternoon, the plaintiff asserts that Ms. Phelps again approached her and hugged her.

*See id.* at 125:10–126:6, 130:13–133:3. The plaintiff again objected, and says she was

"screaming at the top of [her] lungs." *Id.* at 130:22. Ms. Phelps again ignored the plaintiff's

objections, approached the plaintiff from behind, grabbed the plaintiff's stomach and again

touched the plaintiff's chest, laughing the entire time. *See id.* at 130:13–131:15. The second

incident, like the first, lasted only "a couple of seconds." *Id.* at 131:16–18.

Although the incidents upset her, *see id.* at 127:13–21, the plaintiff testified that she was

nonetheless able to carry out her job responsibilities. *See id.* at 127:22–128:2.[5]

## C.    The Plaintiff Reports the Two Incidents, and the Defendant Changes Her Assignment To Avoid Any Further Contact Between the Plaintiff and Ms. Phelps

The plaintiff first informed her supervisor, in passing, on the morning of August 11, 2008

about the first incident. *See id.* at 121:9–122:22, 124:1–22; Def.'s Facts ¶ 38 n.5. Specifically,

the plaintiff states that Ms. Davis-Hall was "walking past" the plaintiff's desk that morning, and

Ms. Davis-Hall inquired whether the plaintiff had been in the office earlier that morning because

she had not signed in that morning, a question that the plaintiff understood as an accusation that

the plaintiff had not been at work that morning. *See* Pl.'s Dep. at 121:9–20; Pl.'s Dep. Ex. 8. In

response, the plaintiff says she told her supervisor: "I got proof, and Shirley Phelps saw me." *Id.*

---

[5] In her deposition, the plaintiff referenced incidents that occurred on her first two days working for the defendant in which Ms. Phelps hovered over the plaintiff and "smacked" the plaintiff's hand when the plaintiff mistyped a letter. *See* Pl.'s Dep. at 22:10–24:16. The plaintiff also stated that after these incidents she requested that her supervisor reassign her so that she did not have to work for Ms. Phelps. *Id.* These allegations, however, do not appear in the Complaint and, since they were not raised in the earlier EEOC Charge of Discrimination, *see* Pl.'s Dep. Ex. 13 (Charge of Discrimination filed by Paula V. Whiting against Labat-Anderson, Inc., Agency Charge No. 570-2008-00055 (Nov. 10, 2008)), the plaintiff may not use allegations of this earlier unrelated conduct to satisfy her prima facie case of sex discrimination. *See, e.g., Park v. Howard Univ.*, 71 F.3d 904, 907 ("A Title VII lawsuit following the EEOC charge is limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations'") (quoting *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)).

5

at 121:21–22. The plaintiff says her supervisor then responded, "I talked to her, and she ain't seen you." *Id.* at 121:22–122:1. The plaintiff states that she then told her supervisor, "Yes. She saw me. She grabbed me and everything," and then elaborated that Ms. Phelps "grabbed me and was hugging and kissing on me." *Id.* at 122:1–5. The plaintiff did not at that time elaborate on the morning incident, and did not tell Ms. Davis-Hall that Ms. Phelps had touched her breasts. *Id.* at 122:11–13. The plaintiff then asserts that she asked her supervisor, "Can I be reassigned and moved?" *Id.* at 122:6. When the plaintiff was asked how her supervisor responded she says, "She wasn't worried about what Shirley Phelps did to me." *Id.* at 124:1–2. According to the plaintiff, she only spoke with her supervisor that morning "[l]ong enough to give the okay that she believed that I had been there all day." *Id.* at 124:3–5. The plaintiff then went back to doing her work. *Id.* at 125:1–6.[6]

Later that day, after the second incident, the plaintiff reported both incidents to Ms. Davis-Hall. *See* Davis-Hall Aff. ¶ 17. Specifically, the defendant recounts that the plaintiff entered the office of Ms. Davis-Hall at approximately 4:45 p.m while Ms. Davis-Hall was meeting with another employee. The plaintiff reported at that time that "Ms. Phelps had just hugged and kissed her." *Id.*; Pl.'s Dep. at 126:6–7. The plaintiff did not report that Ms. Phelps had touched her breasts.[7] *See* Davis-Hall Aff. ¶ 17; Pl.'s Dep. at 133:21–134:11, 135:10–22. At that time, Ms. Davis-Hall asked if the plaintiff wanted to file a complaint, but the plaintiff

---

[6] The defendant suggests that the plaintiff "initially did not inform Ms. Davis-Hall of the [morning] incident because she thought it was an accident." Def.'s Facts ¶ 38 n.5. The defendant misreads the plaintiff's deposition and written statement, however. The plaintiff testified that she did not object initially *to Ms. Phelps* about the inappropriate touching when she thought the touching was accidental, *see* Pl.'s Dep. at 114:13–22; Pl.'s Ex. 8, but as soon as she realized the touching was not accidental, she told Ms. Phelps to leave her alone. Pl.'s Dep. at 110:6–7; Pl.'s Dep. Ex. 8.

[7] The defendant states in its Statement of Undisputed Facts that the plaintiff "did report to Ms. Davis-Hall that Ms. Phelps had touched Plaintiff's breasts." Def.'s Facts ¶ 39. That appears to be a typographical error, however, as Ms. Davis-Hall's affidavit, on which the defendant relies, states clearly that "Ms. Whiting did not tell me that Ms. Phelps had touched her breasts." Davis-Hall Aff. ¶ 17.

6

insisted that she did *not* want to file a complaint because she did not want to get anyone in trouble. *See* Pl.'s Dep. at 134:8–11; Davis-Hall Aff. ¶ 17. The plaintiff asked only that Ms. Davis-Hall reassign the plaintiff away from Ms. Phelps and otherwise keep Ms. Phelps away from the plaintiff. *See* Pl.'s Dep. at 126:14–16, 134:8–11, 135:5–7; Davis-Hall Aff. ¶ 17.

In response to the plaintiff's request, Ms. Davis-Hall immediately took a number of actions: first, she notified Ms. Phelps' supervisor about the plaintiff's accusations. Davis-Hall Aff. ¶ 18. Second, she spoke directly with Ms. Phelps, who "denied Ms. Whiting's allegations." *Id.* ¶ 19. Third, she "immediately changed the office procedures and beg[a]n picking up and delivering work files from Ms. Phelps' office rather than requiring Ms. Whiting to do so in order to limit further contact between Ms. Whiting and Ms. Phelps." *Id.* ¶ 20.

After the plaintiff reported the incident to her supervisor on the afternoon of August 11, 2008, there were no other incidents involving the plaintiff and Ms. Phelps.[8] *See id.* Moreover, the plaintiff filed no formal complaint about her interactions with Ms. Phelps, and apparently did not report the incidents to anyone else in an authority position, nor ask for any additional action on the part of the defendant's management. *See id.* While the plaintiff informed two co-workers about the incident, *see* Pl.'s Dep. at 128:8–22, neither of these co-workers had any managerial authority, *see* Davis-Hall Aff. ¶ 17 n.2.

---

[8] The plaintiff argues in her Opposition that "[c]ontrary to Defendant's claim that Plaintiff had little interaction with Ms. Phelps after Plaintiff made the complaint, Plaintiff continued to work for Ms. Phelps on a consistent basis until September 3, 2008." Pl.'s Opp'n at 5. In support of this contention, the plaintiff's counsel cites an unsworn phone conversation with the plaintiff on March 28, 2012, and states that contacting the plaintiff for purposes of obtaining a sworn affidavit is "near impossible." *Id.* Apparently, the plaintiff's counsel have consistently had difficulty communicating with their client. *See, e.g.*, Pl.'s Mot. to Extend the Deadline for Discovery, ECF No. 23, at 1 ("Plaintiff has been unavailable for a large portion of each month because her telephone has been turned off continually for financial reasons."); Pl.'s Resp. to Court to Accept Late Serv. of Compl., ECF No. 9, at 1–2 (discussing the difficulty counsel had communicating with the plaintiff). There is no basis, however, for the Court to consider extra-record evidence consisting of hearsay accounts by counsel of unsworn statements. *See* FED. R. CIV. P. 56(c)(1)(A). Furthermore, it is uncontested that the plaintiff alleged no further harassment from Ms. Phelps after she made her complaint.

**D. The Plaintiff Distributes a "Sexual Harassment Complaint," and the Defendant Reassigns Her to Another Worksite**

Nearly a month after the alleged incidents, with the encouragement of her friends and family, *see* Pl.'s Dep. at 91:22–92:6, the plaintiff began distributing to individuals who walked by her desk a written statement entitled "A SEXUAL HARASSMENT COMPLAINT AGAINST SHIRLEY PHELPS," *see id.* Ex. 8 (emphasis in original). *See* Pl.'s Dep. at 149:8– 14. The written statement described the alleged incidents of August 11, 2008, claimed that the plaintiff was sexually harassed by Ms. Phelps (whom the plaintiff mistakenly referred to in the written statement as her "boss"), and detailed the reporting of those incidents to Ms. Davis-Hall. *See id.* Ex. 8.

According to the plaintiff, Ms. Davis-Hall learned about the written statement because the plaintiff asked Ms. Phelps' supervisor, who was a notary, to "notarize" the statement, and the supervisor informed Ms. Davis-Hall about it. Pl.'s Dep. at 18:6–18. Upon learning about the statement, Ms. Davis-Hall requested a copy from the plaintiff. *See* Davis-Hall Aff. ¶ 21. Initially, the plaintiff emailed Ms. Davis-Hall back, saying just "I don't want to talk to nobody. I just want to file a complaint and there is my statement." Pl.'s Dep. Ex. 9; Davis-Hall Aff. ¶ 21; Davis-Hall Aff. Ex. 4 (Email from the plaintiff to Kathy Davis-Hall, dated Sept. 3, 2008). Ms. Davis-Hall emailed the plaintiff back and informed her that she would need her cooperation in order to respond to the plaintiff's allegations. *See* Davis-Hall Aff. ¶ 21; Davis-Hall Aff. Ex. 4; Pl.'s Dep. Ex. 9. Ms. Davis-Hall also immediately contacted the defendant's director of Human Resources, Sandy Laboon, to inform her about the plaintiff's allegations and the written statement she was distributing to other employees. *See* Davis-Hall Aff. ¶¶ 21-22; Pl.'s Dep. at 149:15–150:15.

8

After reviewing the plaintiff's written statement, Ms. Laboon came to the DOJ office immediately, that same day, to discuss the plaintiff's concerns. *See* Davis-Hall Aff. ¶¶ 22–23; Pl.'s Dep. at 150:13–15. During the meeting with Ms. Laboon and Ms. Davis-Hall, the plaintiff explained that she believed Ms. Phelps meant no harm. *See* Davis-Hall Aff. ¶ 23. Ms. Laboon asked if the plaintiff wanted to transfer to a new work location, two blocks away, and the plaintiff, "who admittedly wanted to transfer, voluntarily and affirmatively made the decision to move to the new location." Davis-Hall Aff. ¶ 23; *see also* Pl.'s Dep. at 19:5–15, 154:3–9.

After that meeting, Ms. Davis-Hall sent the plaintiff home for the day with pay, and immediately reassigned the plaintiff to the defendant's "Document Center," a facility located a block or two away. *See* Davis-Hall Aff. ¶¶ 23, 25; Pl.'s Dep. at 157:4–158:1. Ms. Laboon and Ms. Davis-Hall also met with Ms. Phelps' supervisor, and explained that they had transferred the plaintiff to another location. *See* Davis-Hall Aff. ¶ 24. Both Ms. Laboon and Ms. Davis-Hall requested to speak directly with Ms. Phelps, but Ms. Phelps' supervisor refused to allow them to do so. *See id.*

The day after her meeting with Ms. Laboon and Ms. Davis-Hall, the plaintiff began her new assignment at the Document Center, where the plaintiff worked "in the same capacity in which she worked" at the DOJ, for exactly the same pay, and for exactly the same number of hours. Davis-Hall Aff. ¶ 25; Pl.'s Dep. at 157:4–15, 158:2–16.

The plaintiff apparently did not view the reassignment as retaliation. Pl.'s Dep. at 189:2–9. While the plaintiff repeatedly asked Ms. Davis-Hall if she could transfer back to the DOJ office, *see* Davis-Hall Aff. ¶ 26; Pl.'s Facts ¶ 66, the plaintiff also stated about her reassignment to the new building: "I love it here and all the people like me here, and I wouldn't

9

mind staying here." Pl.'s Dep. at 84:17–19; *see also* Davis-Hall Aff. ¶ 26. The plaintiff never

interacted with Ms. Phelps again after her transfer. *See* Pl.'s Dep. at 158:20–22.

### E.     The Plaintiff's Short-Term Employment with the Defendant Ends

After her transfer to the Document Center, the plaintiff worked without further incident

until her ninety-day short-term employment assignment ended on September 30, 2008. *See*

Davis-Hall Aff. ¶¶ 6, 28; Davis-Hall Aff. Ex. 6 (Termination letter, dated September 29, 2008, to

the plaintiff, explaining that "[y]our layoff is due to the ending of the contract under which you

have been working"). Effective on that date, the defendant "terminated all twenty . . . of the

provisional/temporary positions created to work on the short-term assignment at OIL," and the

defendant terminated sixteen of the twenty employees hired to work on that project. *Id.* ¶ 28.

None of the other individuals who were terminated submitted workplace complaints during their

short-term employment with the defendant. *See id.*

The four employees who were not terminated at that time were employees the DOJ had

specifically requested for other positions at the DOJ. *See id.* Neither Ms. Laboon nor Ms.

Davis-Hall had any input in deciding which individuals were selected by the DOJ for new

assignments. *See id.*

Several months later, the other employees terminated at the same time as the plaintiff

applied for new positions, and were rehired by the defendant. *See id.*

The plaintiff never formally applied for a position with the defendant. *See id.* ¶ 29.

The plaintiff did informally email Ms. Davis-Hall, on December 4, 2008, to inquire about

whether Ms. Davis-Hall had a job for her or for her daughter. *See* Davis-Hall Aff. ¶ 30. Ms.

Davis-Hall did not have any openings at OIL at that time, however. *See id.* The plaintiff

explained that she did not take personally Ms. Davis-Hall's not giving her a new assignment,

10

especially because Ms. Davis[...] did not have an assignment for the plaintiff's daughter, who had a college degree. [...] Dep. at 8?:6–89:3.

  **F. Procedural [H...]**

   Following the end of h[...] [...]-term employment with the defendant, the plaintiff filed a charge of discrimination with [...] [...]d Employment Opportunity Commission ("EEOC") on or about November 10, 2008. [...] [...] Ex. 13 (Charge of Discrimination filed by Paula V. Whiting against Labat-And[...] [...] Agency Charge No. 570-2008-00055 (Nov. 10, 2008)). The plaintiff later filed this ac[...] [...] the United States District Court for the District of Columbia against both the Attorney Ge[...] [...]he United States and Labat-Anderson, Inc. *See* Compl.[9]

   This Court has alre[...]y [...] the Attorney General's Motion to Dismiss for Lack of Jurisdiction, ECF No. 18, w[...] [...] urt granted as conceded after the plaintiff failed to respond to the motion for n[...] [...]onths. [...]em. Op. & Order (Apr. 13, 2011), ECF No. 19. Following the dismissal of [...] [...]y Gen[...]l from the litigation and following discovery, Labat-Anderson, Inc. (the o[...]y [...]ning de[...]ndant) moved for summary judgment. *See* Def.'s Mot. That motion is now p[...] [...]fore the Court.[10]

**II. LEGAL STANDA[...]**

   Federal Rule of Civil Procedure 56 provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a ma[...]er o[...] law." F[...]. R. CIV. P. 56(a). Summary judgment is properly granted against a party who, '[...] [...]equate [...]me for discovery and upon motion, . . . fails to

---

[9] This case was randomly reassig[...]d [...] [...]signed judge on January 20, 2011.

[10] During discovery, both of the [...] [...]eys moved to withdraw as counsel. Pl.'s Mot. to Withdraw as Counsel, ECF No. 22. The Cour[...] de[...]e[...] [...]la[...]ff's motion without prejudice because the motion did not discuss the likelihood that such a withdrawal would significantly delay resolution of the case, nor explain why such withdrawal was necessary, and because it would have left the plaintiff without a lawyer in the midst of discovery. *See* Minute Order (July 5, 2011).

11

make a showing sufficient to ___ ___ ___ ___ once of an element essential to that party's case, and on which that party will be ___ ___ burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate that there is an "absence of a genuine issue of material fact" in dispute. *Id.* at 323. "[T]he burden on the moving party may be discharged by 'showing'— ___ ___ pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

In ruling on a motion for summary judgment, the Court must draw all justifiable inferences in favor of the nonmoving party, and shall accept the nonmoving party's evidence as true. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Estate of Parsons v. Palestinian Auth.*, 651 F.3d ___ ___ (D.C. Cir. 2011); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). The Court is only required to consider the materials explicitly cited by the parties, but may on its own accord consider other materials in the record." FED. R. CIV. P. 56(c)(3).

For a factual dispute to ___ ___ ___, *Estate of Parsons*, 651 F.3d at 123, the nonmoving party must establish more than the "mere existence of a scintilla of evidence" in support of its position, *Anderson*, 477 U.S. at ___, and cannot simply rely on allegations or conclusory statements, *see Greene v. ___ ___ F.3d ___ ___ 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *See Anderson*, 477 U.S. at 2___ ___ ___ ___ it might affect the outcome of the suit under the governing law, and a dispute ___ ___ material ___ is genuine if the evidence is such that a reasonable jury could return ___ ___ for the nonmoving party." *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (citations and internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

"[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all the ᴛ immaterial." *Celotex*, 477 U.S. at 323. In that situation, "[t]he moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.*

## III.   DISCUSSION

The defendant moves to dismiss the plaintiff's claims of sexual harassment (Count I) and retaliation (Count II). Def.'s Mot.; Defendant Labat-Anderson Incorporated's Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem."), 2. The Court will address each of these claims in turn.

### A.   Plaintiff's Sexual Harassment Claim

The Court first turns to the plaintiff's claim that she was subject to sexual harassment and a hostile work environment based on the two incidents that occurred on August 11, 2008, and what the plaintiff characterizes as an inadequate response by the defendant to her allegations. *See* Pl.'s Opp'n at 4 ("The plaintiff endured a hostile work environment because she believed that management did not take her claims seriously"); Compl. at 5 (Count I) (asserting that the defendant "took [no] action against Ms. Phelps"). The defendant moves to dismiss the plaintiff's sexual harassment claim, contending that the plaintiff cannot establish a prima facie Title VII claim for sexual discrimination in the workplace because she cannot show that the alleged harassment (1) was based on sex, (2) was severe or pervasive, or (3) that the defendant is liable for the harassment. *See* Def.'s Mem. at 12-15; Defendant Labat-Anderson Incorporated's Reply in Supp. of Mot. for Summ. J. ("Def.'s Reply"), ECF No. 30, at 5-10. The plaintiff responds, in opposition, (1) that the nature of the touching at issue proves that the touching was based on sex, (2) that the two incidents and the defendant's inadequate response affected the plaintiff so

severely as to create a hos        me      i       t, and (3) that the defendant's inadequate
response to the situation                 i   ay impute liability to the defendant. *See* Pl.'s
Opp'n at 3-6.

      **1.**   Se          n           **Hostile Work Environment**

      Title VII of the C        A  o       t  akes it unlawful for an employer "to fail or
refuse to hire or to discha   g    r    i    tal  n  herwise discriminate against any individual
with respect to [her] comp          np  ,  c    ns, or privileges of employment, because of
such individual's . . . sc                            2(a)(1). Such unlawful discrimination
includes "[w]hen the wo               ca   1  'discriminatory intimidation, ridicule, and
insult' that is 'sufficien                    er  v     ter the conditions of the victim's employment
and create an abusive wo                  on       *rris v. Forklift Sys., Inc.,* 510 U.S. 17, 21
(1993) (citations omitted).

      To make out a                              imination, a plaintiff must show

> (1) the employee was a member of a protected class; (2) the employee was
> subjected to unwelcom[] sexual harassment . . . ; (3) the harassment complained
> of was based upon sex; (4) the charge  s  xual harassment had the effect of
> unreasonably interfering with the pl  int  's work performance and creating an
> intimidating, hostile      fensive wor  environment . . . ; and (5) the existence
> of respondeat       b  lly.

      *Davis v. Coa*      *o*  *i*             19, 1122-23 (D.C. Cir. 2002) (alterations in
original) (quoting *Ye*     *d*                 *lle, Inc.,* 107 F.3d 443, 445 (6th Cir. 1997)).
In this case, there is no dispute that   plain  f  a woman and a member of a protected class
and that she did not "welcom"   int         h Ms. Phelps. Nevertheless, since the
plaintiff plainly canno  s       he  th el  m  prima facie case because she has not shown

the existence of resp          intiff has not demonstrated a prima facie

case of sex discrimi

2.        The           to **Impute Liability to the Defendant.**

The defendant ar              , timely remedial action upon learning that

Ms. Phelps, a non-employee             touched the plaintiff, and is therefore not liable

for the alleged haras                20; Def.'s Reply at 8-10.  The plaintiff

argues, in opposition                 response to the incidents were not timely or

effective because, *int          action" about the plaintiff's allegations of

sexual harassment and               ces until after the plaintiff began distributing

her written statement,              nts.  *See* Pl.'s Opp'n at 5-6.

A Title VII p                that             ndant is liable for the actions of the

individuals causing             *ee Davis*, 275 F.3d at 1123.  In order to

prevail against an e              mployee created a hostile work environment,

"a plaintiff must show            ould have known of the existence of the

hostile work enviro              medial action." *Simms v. Ctr. for Corr.*

*Health & Policy Stu*              (D.D.C. 2011); *see also Curry v. District of*

*Columbia*, 195 F.3d              ing that an employer is vicariously liable for

the actions of an e              oyer knew or should have known of the

harassment and fail              ropriate corrective action"); *Martin v.*

*Howard Univ.*, No.              XIS 19516 at *7-8 (D.D.C. 1999)

(explaining that the              ponsible for [a non-employee's] conduct if

it knew or should h              e's] actions created a hostile work

---

[11] Since the Court find              nce of respondeat superior liability, the Court need
not reach the defendan              th elements of a prima facie case of sex
discrimination.

environment for the _____ ___ __ to ____ ____ctive action"). When considering whether an employer is liable for the hostile work environment created by a non-employee, the Court must "consider the extent of the employer's control over the alleged harasser and any other legal responsibility which the employer may have with respect to the conduct of the non-employees." *Id.* at *8. "An employer may avoid liability by _____ ting one of two affirmative defenses: 1) that it exercised reasonable care ___ __ __ __ al c___ __ promptly any sexually harassing behavior, or 2) that the plaintiff employee ___ __ nably f___ __ to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Simms*, 794 F. Supp. 2d at 191.

The record in the case clearly that the _____ ___ ___ took timely, appropriate, and reasonable action in response to ___ the p___ __ the p___ ___ ___ of harassment on August 11, 2008, as well as in response to the written ___ ___ ___ ___ ___ September 2, 2008. When the plaintiff informed Ms. Davis-Hall as ___ f i ___ ___ ___ on the afternoon of August 11, 2008, Ms. Davis-Hall responded with ___ ___ ___ ___ ___ ___ pt to determine what corrective actions were necessary. First, Ms. Davis-Hall allowed the plaintiff to speak with her immediately even though she was in the ___ ___ ___ ___ ___ ___ ___ ___ her employee. *See* Davis-Hall Aff. ¶ 17. Second, Ms. Davis ___ ___ ___ ___ ___ ___ ___ ___ wanted to file a formal complaint, which the plaintiff declin___ ___ ___ ___ ___ ___ ___ the plaintiff's refusal to file a formal complaint, Ms. Davis-Hall ___ ___ ___ ___ ___ investigated the plaintiff's concerns. Although the plaintiff reported the incidents ___ 11 person the same day, her supervisor notified Ms. Phelps' supervisor about the plaintiff's ___ ___ ___ ___ ___ ___ Phelps. *See id.* ¶ 18. Ms. Davis-Hall also spoke directly with ___ ___ ___ ___ ___ ___ ff's allegations. *See id.* ¶ 19. Fourth, Ms. Davis-Hall immed___ ___ ___ ___ ___ ___ ___, so that she herself would pick up and

deliver work files                                    requiring the plaintiff to do so "in order to

limit further conta                                   elps." *Id.* ¶ 20. Finally, Ms. Davis-Hall

informed both the                                     e change in office procedure. *See id.* All of

these remedial step                                   record is clear that following these remedial

steps there was no                                    ff and Ms. Phelps, and the plaintiff alleged

no further sexual                                     Ms. Phelps.[12] Pl.'s Dep. at 193:7–12.

    The defen                                          e action on September 3, 2008, when Ms.

Davis-Hall learne                                     written statement from her desk entitled

"A Sexual Harass                                      elps." First, Ms. Davis-Hall requested that

the plaintiff forw                                    t for her review. *See* Davis-Hall Aff. ¶

21. Second, the                                        efendant's director of human resources,

Ms. Laboon. *See id.* ¶ 22. Third, Ms. Laboon, upon hearing about the plaintiff's written

statement, came to the DOJ that same day to investigate, to meet with Ms. Davis-Hall and the

plaintiff, and to di                                  *id.* ¶¶ 22-23. Fourth, Ms. Laboon asked

the plaintiff if she                                  worksite located two blocks away, and

the plaintiff agreed                                  :17–19 (Q: "Did you have any objection to

transferring to the new location?" A: "No. I was happy they didn't fire me."). Fifth, the

defendant sent the plaintiff home that day, with pay, and immediately implemented a transfer of

---

[12] While the plaintiff                          vor in passing on the morning of August 11, 2008
that Ms. Phelps "gra                              her]," the plaintiff admits that at that time she did
not inform her superv                             Pl.'s Dep. at 122:4–5, 11–13. While she notes in
her deposition that sh                            and moved?," *id.* at 122:6, she did not pursue this
issue with the super                              nd that the plaintiff only made these comments to
her supervisor after                              he had been at work that morning. Since the
plaintiff does not ind                            eved she had been sexually harassed, assaulted, or
that she was disturbed                            , it was reasonable for the supervisor not to follow
up on the plaintiff's co                          the supervisor questioned her about when she had
arrived to work, that she had been raped[e] and kissed, etc.," *id.* at 122:4–5, by a co-worker. Even if the
supervisor should have construed the plaintiff's comment as a complaint, however, the defendant timely followed up
on the plaintiff's complaint against Ms. Phelps the same day, including by changing office procedures to
minimize the plainti

the plaintiff to a                                    ng essentially the same work, for the same

number of hours                                    she would have no chance of

interacting with                                    Pl.'s Dep. at 158:9–16. Sixth, following

the meeting wit                                    Laboon met with Ms. Phelps' supervisor

about the situation.                               Ms. Davis-Hall and Ms. Laboon

specifically request                               th Ms. Phelps directly but Ms. Phelps'

supervisor "refus                                   he DOJ would address the situation

internally." *Id.*                                 ntiff never interacted with Ms. Phelps

again, Pl.'s Dep.                                   further inquiries from the plaintiff to

the defendant re                                   3.

     All of th                                     th the seriousness that disturbing

allegations of th                                  laintiff was correct to report these

incidents to her                                   efendant's director of human resources

acted efficiently                                   e plaintiff would not interact with Ms.

Phelps again. T                                    ly the action that the plaintiff wanted

them to take. W                                    d you want Labat to do if you didn't file

a formal compl                                      going to do in response to your

statement?" the                                    else to work with in the building, you

know, someone                                       the plaintiff to another building to

ensure no furthe                                   s. Phelps occurred, the defendant

honored the pla                                     n Ms. Phelps. Furthermore, the plaintiff

actually acknow                                     d wished to stay. *See id.* at 64:16–19.

Although the plaintiff suggests the defendant should have done more to ensure that the plaintiff "was in a safe work environment," Pl.'s ... at 6, the Court disagrees that any further action was required ... the supervisor of the two incidents, in which she alleged ... dly, the supervisor took immediate action to ensure that the plaintiff was in a "safe work environment." Upon learning indirectly, a month after the incidents, that the plaintiff was still concerned about the incidents of August 11, 2008, the supervisor again took immediate ... upon the director of human resources who moved the ... her worksite to ensure no further contact with the alleged ... t the defendant took reasonable, timely, appropriate action in response to ... incidents. *See Carter v. Greenspan*, 304 F. Supp. 2d 13, 26 (D.D.C. 200 ... (finding an employer took reasonable steps concerning alleged harassment "by immediately ... ee Relations Specialist, conducting a meeting with the parties, ... veryone involved."). Accordingly, the plaintiff has no ... and thus she has failed to establish a prima facie case ...

**B.** Plaintiff's ... Claim

The Court ... the plaintiff's termination was retaliatory.[13] In ... dant asserts that the plaintiff cannot

---

[13] In her Complaint ... against her [both] by transferring her from her former work location ... mployees that she was sexually harassed and by not permitting ... ined about the sexual harassment she experienced." Co ... t the plaintiff conceded that she did not believe her relocation to the ... 2–5 (Q: "So the termination, not the relocation, was what you beli ... ly said I shouldn't have said nothing and I would still have my job." ... was being fired for me complaining"). Although the plain ... intiff's transfer to another building "was a form of punishment ... where she was and had not engaged in any problem behavior ... ation for this conclusory statement and provides no expla ... osition that her only claim for retaliation was

establish a pri              if she could, the defendant had a

legitimate, no              ation – namely, the end of her short-

term employn              t. Def.'s Mem. at 20-25. The

plaintiff, in a o              fendant retaliated against the plaintiff

both by transf              y terminating her after her 90-day

contract expir

Title V              on employer from retaliating against

an employee "              actice made an unlawful employment

practice" under Title VII, 42 U.S.C. § 2000e-3(a). Where there is no direct evidence of

retaliation, the Court analyzes a plaintiff's retaliation claim under the familiar burden-shifting

framework of M              , 802-05 (1973). See Holbrook v.

Reno, 196 F.3              Am. Univ., 151 F.3d 1090, 1094

(D.C. Cir. 199              rk, "[a] plaintiff must [first] show

that (1) she engaged in statutorily protected activity, (2) her employer took an adverse personnel

action against her; and (3) a causal connection between the two exists." Holbrook, 196 F.3d at

263. Following the plaintiff's showing, "the burden of production shifts to the employer to

articulate a legi              verse action." Id. If the employer

makes this sho              by a preponderance of the evidence

that the asserte

In this case, the plaintiff must at first burden on was an adverse action and the

defendant has proffered a legitimate, non-discriminatory reason for her termination, namely that

she had a short              ced to eliminate the plaintiff's

based on her ter              position, the Court will construe the
plaintiff's claim

position, and ... d ... ers hired for a ninety-day term, "when

the funding f ... ; *see also* Davis-Hall Aff. ¶ 6 ("After

September 30, ... ne ... 0-day project terminated, the task

order ended, ... ss ... s created to work on the short-term

project were c ... c ... ed a legitimate, non-retaliatory reason

for the challen ... he ... whether the employee produced

sufficient evi ... ployer's asserted non-retaliatory

reason was no ... ntionally retaliated against the

employee in v ... 66 F.3d 1377, 1383-84 (D.C. Cir.

2012) (citation ...

Here, ... evidence for a reasonable jury to find

that the defen ... actual reason, and that she was

retaliated aga ... d that the plaintiff was terminated

solely becaus ... ssignment, for which the DOJ's

funding had e ... p. 19, 23 (D.D.C. 1994) (finding that

the need to fu ... tutes a legitimate, non-discriminatory

reason for ter ... e record reveals that the defendant

terminated th ... at her, but because the contract under

which the de ... Aff. ¶¶ 6, 28. Second, there is no

dispute in the ... ed a short-term position.[14] *See* Pl.'s

Dep. at 58:1 ... retain the plaintiff, it could not have

done so, beca ... run out. *See* Davis-Hall Aff. ¶ 6.

---

[14] While the pla ... she would be r ... f the temporary hires, she had no guarantee that

Third, along with the l of the other 19 short-term positions

filled at the time the plaintiff was hired. See Id. Fourth, the plaintiff offers no evidence to

rebut the defendant's proffered reason for the plaintiff's termination, and in fact agrees with the

defendant that she was subject to a short term assignment. See Pl.'s Dep. at 58:13–18. Finally,

there is simply no evidence the record reflects reason for terminating the

plaintiff's employment other than the e.g., Smith v. District of Columbia,

430 F.3d 450, 455 lgment for the defendant on the

plaintiff's retaliation claim where the defendant's nondiscriminatory justifications for its

actions remain completely unrebutted"). Accordingly, since the record reflects that the

defendant had a legitimate non-discriminatory reason to terminate the plaintiff's employment,

and there is no evidence to rebut the defendant's reason granted summary judgment on the

plaintiff's retaliation claim.

## IV. CONCLUSION

For the reasons discussed above, the defendant's motion for Summary Judgment, ECF

No. 28, is granted as set forth in the accompanying Memorandum Opinion.

**Date:** February



Digitally signed by Beryl A.
Howell
DN: cn=Beryl A. Howell,
o=District Court for the District
of Columbia, ou=United States
District Court Judge,
email=Howell_Chambers@dcd.
uscourts.gov, c=US
Date: 2013.02.28 17:40:47
-05'00'

L. A. HOWELL
United States District Judge

---

[15] Although the neither Ms. Davis-Hall nor Ms. Laboon
had any discret Davis-Hall Aff. ¶ 28. Rather, the
defendant retai the defendant to do so. See id. The
defendant also at the same time as the plaintiff's but
the defendant only, which the plaintiff never did. See id.
¶¶ 28-29.

**REEMENT**
**IMS**

This Conf... ... ...f All Claims ("Agreement") is
made and ... ... ... ...Is. Whiting"), on the one hand;
and Labat ... ... ... ...sidiaries, officers, executives,
directors, ... ... ...ectively referred to herein as
"Labat"), ... ...

WHEREAS, Ms. Whiting and Labat desire to ...tte, fully and finally, all differences
between them arising from, and in any way con... ...with, Ms. Whiting's employment
with Labat, the termination of her employment, ... ...other relationship between Ms.
Whiting and ... ... ... ...ms contained in the Complaint
captioned *Paul* ... ... ...l Action No. 1:10-cv-00898,
currently p... ... ... ...the District of Columbia, (all
actual and ... ... ...Action or not, are collectively
referred to ...

THEREFO... ... ... ...and promises herein, and other
good and ... ... ...is hereby acknowledged, and
to resolve the Litig... ... ...set forth herein, it is agreed by
and between Ms. Whiting and Labat as follows:

1.    The effective date of this Agreement shall ... ...eighth (8th) day after the date
      upon ... ...[Ms. Whiting]... ...greement, subject to and in
      accord... ... ...however, that no monies shall be
      pai... ... ...less at least seven days have
      ex... ... ...g signs the Agreement.  Ms.
      W... ... ...e, and that this Agreement will
      no... ... ...and does not revoke this
      Agr...

2.    No later ... ... ...fully executed by the parties,
      counsel ... ... ...Court a Stipulation of Dismissal
      With Prejudice of ... ... ...pressly agrees that she shall not
      be ... ... ...ent unless the Complaint is
      dism...

3.    Lab... ... ... ...usand Five Hundred Dollars
      ($...

      A... ... ...Ms. Whiting in the amount of.
      ...), less required withholdings
      ...alleged backpay due to Ms.
      ...V-2 in connection with this
      ...tax forms in accordance with
      ...ng agrees to indemnify and
      ...all tax claims arising out of

B.          Ms. Whiting in the amount of  Dollars ($4,213.00). These  or any other non-wage-based  abat will issue a Form 1099 in  eliver all applicable tax forms  lations. Ms. Whiting agrees  and against any and all tax  ies.

C.          to Brown Law Offices in the  dred and Thirty-four Dollars  costs allegedly incurred by  99 (Box 14) to Brown Law  Whiting, individually, in  ffices and Ms. Whiting agree  and against any and all tax

D.          e the consideration identified  lowing have taken place: (1)  ent appropriately signed and  expiration of the seven (7)  in paragraph 1 above and  y Labat that a Stipulation of  Whiting or attorney for Ms.  th the Court; and (4) fully  Whiting's legal counsel.

E.          nt to paragraph 3 of this  pensate and fully satisfy the  ited to any and all monetary,  and any other damages that Ms.  es and costs which she may  ion.

F.          ted claims. Neither this  nt shall be construed as an  ny liability to Ms. Whiting  such liability, as well as  engaging in any unlawful

4.      Ms.         e by Labat, and that she will  not         e or full-time position and/or  wo         mporary worker with Labat,  and         application for employment  by

5.      Ms.         ectly, engage in any conduct  tha         ritten or oral statements or

remarks (including, without limitation, the repetition or distribution of derogatory rumors, allegations, disclosures, statements or comments) to any person and/or entity, which are false, harmful, or damaging to the integrity, reputation or good will of Whiting.

6.     In exchange for the consideration provided, Whiting releases Labat-Anderson, Inc., its parents, subsidiaries or otherwise affiliated entities, predecessors, successors, officers, directors, and shareholders and any insurer and/or reinsurer of these entities and/or persons (all of the foregoing entities and individuals being referred to herein as "Releasees") from any and all claims she may have, known or unknown, including but not limited to those that are related to her employment with Labat-Anderson, the end of her employment, or any other relationship between Ms. Whiting and Labat-Anderson from the beginning of time through the date of execution of this Agreement above.

Ms. Whiting specifically agrees that she is releasing Releasees from any and all claims arising out of the above, including but not limited to those for breach of contract, wrongful discharge, misrepresentation, fraudulent inducement, detrimental reliance, or any other alleged tort, personal injury, wrongful termination, defamation, wrongful discharge, and any and all claims based upon any oral or written agreement or promises, including, but not limited to, any claims for benefits or actions that may be released by private agreement, arising at any time through the date that this Agreement is executed. This Agreement shall not release any claims that may arise after this Agreement is executed. Ms. Whiting acknowledges, understands and agrees with the terms of this Release.

Ms. Whiting specifically agrees that she is releasing Releasees from any and all claims arising out of discrimination and harassment on the basis of race, color, sex, religion, national origin, alienage or citizenship, marital status, age, disability, status, veteran's status, or any other basis protected under law in employment, including, but not limited to, any claims arising under Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Family and Medical Leave Act, and any other federal laws or regulations to the extent that they may be released, from the beginning of time through the date this Agreement is executed.

Although Ms. Whiting is waiving any claims she may have against Releasees, Ms. Whiting is not waiving the knowing and voluntary nature of this release with the Equal Employment Opportunity Commission, National Labor Relations Board ("NLRB"), or any other governmental agency charged with the enforcement of any employment laws. Ms. Whiting understands that nothing in this release prevents her from filing with, or from participating in any investigation by the EEOC, NLRB, or any other federal agency in enforcement of any employment or labor laws. However, Ms. Whiting waives her right to any individual relief in any proceedings initiated by any

loca                                              Ms. Whiting, against any of
th

7.    W                                    tion in Employment Act of
1967, as amended, Ms. Whiting rep as               knowingly and voluntarily
waive any rights under the Act, and, without limiting the foregoing, Ms. Whiting
further represent, individually and coll   is follows:

a.    She has carefully read, a            of the provisions of this
7

b.    to consider her rights and
she sign this Agreement
this regard is knowing and
presentation, or a threat to

c.    attorney before signing this
Agreement and she did so

d.    Ms. Whiting understands that th  Agreement is legally binding and by
si   ng it

e.    y chosen to enter into this
ed in any way to sign it;

f.    es Releasees, as described
e, known or unknown, in
ation she has obtained by
nts are in addition to any
if she did not sign this

g.    ver of all rights and claims
ination in Employment Act

h.    claims that may arise after

8.    Laba                                 a period of seven (7) days
from                                       in which to revoke her
acce                                       notice shall be sent, by
certifi                                    n Chabrow Berger, Chief
Couns                                      eesburg Pike, Suite 1100
North                                      ot revoke her acceptance of
this A                                     me effective immediately
thereaf                                    thin that period, however,
this A                                     er and it shall not be used
for any

9.    Ms. W                                ge in, assist, or cooperate
wi                                         egard to any complaints,

claims ... ich occurred prior to her
exc... or cause to be filed on her
bel... Whiting agrees that if any
agen... claim, or action against
any of ... t to withdraw her from or
dism... ing further represents that
she ... the agency or court issues
a su... the event such a formal
requ... at within five (5) business
days ... on.

10.   The p... of this Agreement strictly
con... facts or resolution of the
iss... nding the foregoing, any
pa... of the Litigation shall say
the... ty may disclose the terms
of ... s and tax advisors or
pro... e this Agreement to her
sp... Agreement in connection
wi... led by Ms. Whiting; (iv)
eit... uthorities or as otherwise
requ... Agreement or its terms,
pur... first providing notice and
o... g with the subpoena. In
ea... e expressly allowed by
su... notice to the recipient of
th... y confidential; moreover,
an... breach by the party which
m... confidentiality provision
of ... vithout which the parties
w... ch Labat would not have
pa...

11.   T... 5 and/or 10 would cause
in... ng party in an amount
in... parties agree that Ms.
V... relief in any court of
c... olation of paragraphs 5
a... In that regard, should a
p... evailing party in such an
a... ees. Neither the breach
o... e seeking or obtaining of
in... he continuing validity or
en...

12.   T... nto and upon their heirs,
administrators, representatives, exc... and assigns, and shall inure
to the benefit of said parties and each of them and to their heirs, administrators,

repr... ...  Ms. Whiting expressly
w... ... entity any rights, causes of
act..n, o. cla...

13. The p... ... read and fully understand
all of the pr... ... have had an opportunity
m... ... ...presented by counsel; that
th.. ... ... with their respective counsel;
and ... ... ...rily.

14. The p... ... ... executing this Agreement, they
ha... ... ...ment made other than those
sp... ... this Agreement constitutes
th...

15. Th... ... ... the plain meaning of its
te... ... hereto. Both parties have
h... ... ...afting of this Agreement.

16. If ... ... invalid or unenforceable,
su... ... invalid or unenforceable,
an... ... ...rceable to the maximum
ex...

17. N... ... upon any of the parties
h... ... writing signed by both of
t... ... ...t.

18. T... ... the laws of the District of
C... ... ...s. In the event any of the
p... ... ...e/they shall do so in the
U... ... ...s, or the Superior Court for
th... ... ...Y WAIVE ANY RIGHT
T...

19. T... ... counterparts and duplicate
or...

**PLEAS...** ... **...NTAINS A RELEASE**
... ...IS.

LABAT-...

By: ___
Date: ___

12/14/2017

About GPO | Newsroom/Media |                                              Help

**FDsys:**
**GPO's Federal Digital System**
About FDsys
Search Government Publications
Browse Government Publications
FDsys Tutorials and Webinars

---

Actions

Browse United States Courts Opinions
More Information about United States
Courts Opinions
View in Catalog of U.S. Government
Publications
Find at a local Federal depository library
Email a link to this page

---

Advanced Search
by Citation

Metadata

District of Columbia

Defendant
CORPORATION, Defendant

More

PDF | More

Motion for Summary Judgment. Signed

732 North Capitol Street, NW, Washington,

WHITING v. ... et al

**District Of Columbia** District ...
**Case #:**
**Nature of Suit**                                     ... - Employment   ·
**Case Filed:**
**Terminated:**

| Docket | Parties (3) | ... |

**Defendant**
ERIC HIMPTON HOLDER JR.

**Defendant**
LABAT-ANDERSON CORPO...

**Plaintiff**
PAULA V. WHITING

GPO | Feb 28 2013

**MEMORANDUM** O... ... ... ... an **Incorporated's Motion for Summary**
**Judgment. Signed by** ...

Cr... ... to get ... ... for this **case.**

Continue to Cr... Account

Primary - Terminated
PacerMonitor, LLC #3, US, Southern NYC

Superior Court of ... ... Columbia
CIVIL
Civil ...
500 Indiana Avenue, N.W., ... ... hington, D.C. 20001
Tele... ... ...dccourts.gov

Paula Victo... ...

vs.

Case Number _____

Labat-Anderson

Defendant

---

To the above named Defendant:

You are hereby summoned ... ... ... ... nswer to the attached Complaint, either personally or through an attorney, ... ... ... after service of this summons upon you, exclusive of the day ... ... ... It ... ... ... or agency of the United States Government or the District of Columbia Government, you have ... ... ... after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Monday through Friday or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with ... ... ... before you serve a copy of the Answer on the plaintiff or within ... ... ... after you ... ... ... the plaintiff. If you fail to file an Answer, judgment by default ... ... ... ... ... ... ... in the complaint.

Paula Vict...
Name of Plaintiff's Att...

2912 "O" Str...
Address

Washing...

628-937...
Telephone

如需翻译，请打电话 (202) 879-...
번역을 원하시면, (202) 879-...

Clerk of the Court

Deputy Clerk

4/25/19

Để có một bản dịch, hãy gọi (202) 879-4828

IMPORTANT: IF Y... ... ... ... STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL ... ... ... ... DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED ... ... ... ... ER RELIEF DEMANDED IN THE COMPLAINT. IF THIS ... ... ... ... ... ED OR PERSONAL PROPERTY OR REAL ESTATE YOU ... ... ... ... YOU INTEND TO OPPOSE THIS ACTION, *DO NOT F*...

If you wish to talk to ... ... ... ... ... ptly contact one of the offices of the Legal Aid Society (202... ... ... ... ... for help or come to Suite 5000 at 500 Indiana Avenue, N.W. ... ... ... ... for such help.

CV-3110[Rev. June 201...]

Super. Ct. Civ. R. 4





DISTRITO **DE COLUMBIA**
CIVIL
Civiles
Washington, **D.C. 20001**
www.dccourts.gov

Número de Caso: _____

Al susodicho

Po............................................... Contestación a la Demanda adjunta, sea en
persona o po.......................................... los después que usted haya recibido este
citatorio, ex.......................................... siendo demandado en calidad de oficial o
agente del G.......................................... del Gobierno del Distrito de Columbia, tiene usted
sesenta (60).......................................... ......, para entregar su Contestación. Tiene que
enviarle por .......................................... la parte demandante. El nombre y dirección del
abogado apar.......................................... tiene abogado, tiene que enviarle al demandante una
copia de la Co.......................................... ......... ene Citatorio:

A ust.......................................... al Tribunal en la Oficina 5000, sito en 500
Indiana Aver.......................................... entre las 9:00 a.m. y las 12:00 del mediodía
los sábados.......................................... Juez ya sea antes que usted le entregue al
demanda.......................................... haberle hecho la entrega al demandante. Si
usted in.......................................... en rebeldía contra usted para que se haga
efectivo el

_RIO DEL TRIBUNAL_

Nombre del _____

Dirección                                           Subsecretario

Teléfono
如需翻译,请             Để có một bài dịch, hãy gọi (202) 879-4828
            (202) 879-4828

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES
MENCIONADO, SI LUEGO QUE NOTIFICAR, CUANDO LE AVISE EL JUZGADO, PODRÍA
DICTARSE UN FALLO EN CONTRA SUYO LE CUBRE LOS DAÑOS Y PERJUICIOS U OTRO
DESAGRAVIO...................................................... PODRÍA RETENÉRSELE SUS INGRESOS, O
PODRÍA ...................................................... SER VENDIDOS PARA PAGAR EL FALLO. SI
USTED PRE...................................................... _SENTAR LA DEMANDA DENTRO DEL PLAZO
EXIGIDO._

Si dese.......................................... tiene pronto a una de nuestras oficinas del Legal Aid
Society (202.......................................... pedir ayuda o venga a la Oficina 5000 del 500
Indiana Ave.......................................... podría ayuda al respecto.

CV-3110 [Rev. June ____]                                      Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
CIVIL DIVISION
Civil Actions Branch
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001
Telephone: (202) 879-1133 Website: www.dccourts.gov

Paula V. Whiting
29120 Street SE WASH DC 20020
4900 Springs Lane Apt. C. No. 30093 Plaintiff

vs.

Labat Anderson
Defendant

Case Number _2019 CA 002083_

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the Complaint.

Paula V. Whiting
Name of Plaintiff's Attorney
29120 St. S.E. WASH. DC 20000 9930
4900 Springs Lane Apt. C. Narcross
Address

678-937-3424
Telephone

Clerk of the Court

By _____
Deputy Clerk

Patricia Allen
Deputy Clerk

Date _____

如需翻译, 请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828로 전화주십시오.     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ.

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español